## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

CHRIS APPLEWHITE,

Plaintiff,

v.                                                    DECISION and ORDER

CAPTAIN MICHEAL SHEAHAN, et al.,                      08-CV-6045-CJS

Defendants.

### APPEARANCES

For Plaintiff:                  Chris Applewhite, *pro se*
                                642 Essex Street
                                Brooklyn, NY 11208

For Defendants:                 Gary M. Levine, A.A.G.
                                New York State Attorney General's Office
                                144 Exchange Blvd., Suite 200
                                Rochester, NY 14614

### INTRODUCTION

**Siragusa, J.** Plaintiff Chris Applewhite filed this *pro se* action seeking relief under

42 U.S.C. § 1983 for alleged civil rights violations occurring at Southport Correctional

Facility. There are now five motions before the Court: (1) Defendants' motion to dismiss

some or all allegations against thirteen defendants, filed August 20, 2009, ECF No. 12;

(2) Defendants' motion for summary judgment as to three defendants, filed September 21,

2009, ECF No. 20; (3) Defendants' motion to set aside a clerk's entry of default, filed

September 25, 2009, ECF No. 26; (4) Plaintiff's motion for default judgment, filed March

2, 2010, ECF No. 39; and (5) Plaintiff's motion to strike Defendants' motions to dismiss and

for summary judgment, ECF No. 42. For the reasons stated, Plaintiff's motion for default

judgment is denied; Defendants' motion to set aside a clerk's entry of default is granted; Plaintiff's motion to deny or strike Defendants' motions is granted in part, and denied in part; Defendants' motion to dismiss is granted in part, and denied in part; and Defendants' motion for summary judgment is denied without prejudice.

## BACKGROUND

### *Procedural History*

Plaintiff commenced this action by filing a sixty-nine page complaint on January 27, 2008.[1] He sets out three claims for relief based on alleged wrongdoing, from 2003 forward, by a total of nineteen Defendants: Anthony Annucci, DOCCS[2] deputy commissioner; Donald Selsky, former DOCCS SHU director; Michael McGinnis ("McGinnis"), Southport's superintendent; Paul Chappius ("Chappius"), deputy superintendent for security services; Michael Sheahan ("Sheahan"), senior captain, Joseph Cieslak ("Cieslak"), inmate grievance program advisor, Betty Kennedy ("Kennedy"), institution steward; Jimmie Irizarry ("Irizarry"), food service administrator, Kent E. Cassler ("Sergeant Cassler"), supervising sergeant; Stanley Sepiol ("Sepiol"), senior supervising sergeant; Herbert Williams ("Williams"), senior supervising sergeant; John Alves ("Alves"), medical doctor; Bradley S. Sullivan ("C.O. Sullivan"), corrections officer; Larry G. Gleason ("Gleason"), corrections officer; Richard A. Donohue ("Donohue"), lieutenant and tier II disciplinary hearing officer; Michael Furman ("Furman"), lieutenant and day-shift supervisor for C-block; Daniel Sullivan ("Captain Sullivan"), captain and tier II disciplinary appeals review officer; Scott D. Waters

---

[1] This is the date on which Plaintiff signed the complaint and is assumed to have placed it in the Correctional Facility mail. ECF No. 5 at 4.

[2] The New York State Department of Correctional and Community Services.

("Waters"), corrections officer; and Dale L. Hillard ("Hillard"), corrections officer.

The Court issued a Decision and Order, dated May 30, 2008, in which it noted that several of Plaintiff's allegations appeared to pre-date the three-year statute of limitations applicable to civil rights actions, and provided him an opportunity to raise arguments relative to tolling. ECF No. 5. Plaintiff filed a response in which he argued that his first claim for relief alleges a continuing course of retaliatory conduct stemming from grievances and litigation he pursued in an attempt to obtain property to which he was entitled—specifically, a pair of Bermuda shorts. ECF No. 6. He argued that the initial "casual" deprivation "snowballed into the ultimate destruction . . . of the [B]ermuda shorts[] without due process," and that other incidents occurring during that same time period are relevant to show a pattern of harassment. *Id.* at 4-5. In an Order dated March 10, 2009, the Court determined that alleged retaliatory acts pre-dating January 27, 2005, which Plaintiff claims relate to his attempts to retrieve his Bermuda shorts, could go forward under a continuing violation theory, but dismissed as time-barred all other allegations pre-dating January 27, 2005.[3]

The Court did not previously specify which claims and/or Defendants were then dismissed. In the interests of clarity and efficiency, it will do so now. All claims against Sergeant Cassler, who is alleged to have "harassed" Plaintiff in February 2004, Compl. ¶ 46, and manipulated a corrections officer to file a false misbehavior report against

---

[3] Any determination as to the evidentiary relevance of the discrete, unrelated acts was and is premature. However, it has been determined that a continuing violation theory does not apply to salvage untimely claims based on such discrete acts.

Plaintiff on January 24, 2005, *id*. ¶¶ 110-117, are dismissed as time-barred.[4] All claims against C.O. Gleason and Sergeant Sepiol, who are alleged to have acted in concert with Sergeant Cassler, *id.* ¶¶ 108, 176, 146*,* are dismissed as time-barred. All claims against C.O. Bradley Sullivan, the officer allegedly manipulated by Cassler, Gleason, and Sepiol, *id*. ¶¶113, 115-17, 146, are time-barred. Discrete allegations against other Defendants are dismissed as time-barred as well, including: (1) alleged conduct by C.O. Waters on January 24, 2005, *id*. ¶¶ 110-111, 150; (2) Lt. Donahoe's service as a hearing officer in connection with a February 21, 2004, misbehavior report unrelated to the Bermuda shorts, *id*. ¶ 44; (3) Lt. Donahoe's and Daniel Sullivan's alleged "bias" and "arbitrary and capricious" disposition of disciplinary charges brought against Plaintiff on June 3, 2004, and June 7, 2004; (4) allegations relative to the participation of Sullivan, Selsky, and Kennedy in the disposition of a misbehavior report issued to Plaintiff on October 13, 2004, *id*. ¶ 54; and (5) the issuance of cell shield and deprivation orders by Sheahan and McGinnis, on January 25, 2005, in connection with the misbehavior report written by C.O. Bradley Sullivan the previous day, *id*. ¶¶ 100, 115-116. Accordingly, Defendants Cassler, Gleason, Sepiol, and Captain Sullivan are dismissed from this action. Only timely allegations against the remaining Defendants are addressed hereafter.

---

[4] Plaintiff does not state how he was harassed, why he was harassed, or any circumstances surrounding the alleged harassment. Thus, while this particular allegation is presented in Plaintiff's first claim regarding his Bermuda shorts, there are no fact allegations linking Defendant Cassler to the alleged continuing course of retaliation. As for the January 24, 2005, incident, Plaintiff alleges Cassler and others falsely accused him of misconduct because of his "voicing of prior grievance complaints against and/or involving defendants Gleason, Cassler, and Sepiol, et al." Compl. ¶ 109. Again, this has nothing to do with the Bermuda shorts.

*Factual Background*

The following facts are taken from the complaint and, at this juncture, are construed broadly in a light most favorable to Plaintiff. At all relevant times, Plaintiff was an inmate in the custody of DOCCS, and housed at Southport Correctional Facility.

In his first claim, Plaintiff alleges that Defendants McGinnis, Sheahan, Chappius, Cieslak, and Kennedy conspired to retaliate against him for pursuing a grievance and state court proceeding relative to his right to possess a pair of Bermuda shorts. On November 17, 2003, Plaintiff ordered a pair of khaki Bermuda shorts with green pin stripes from an outside vendor. According to Plaintiff, he was entitled to receive the shorts as a PIMS Level III prisoner.[5] The shorts arrived at Southport on January 27, 2004, but were not delivered to Plaintiff. On that same day and the following day, Plaintiff sent letters to the package room officer demanding the immediate delivery of his shorts. On January 30, 2004, he filed a formal grievance. The Inmate Grievance Resolution Committee denied the grievance on February 9, 2004. While it confirmed that Plaintiff could receive a pair of Bermuda shorts, it found he was not entitled to the particular pair he had ordered because they were multi-colored, not solid-colored. Upon receiving the denial, on February 12, 2004, Plaintiff appealed the decision to Defendant McGinnis, who concurred with the Committee's ruling in a decision dated February 24, 2004. Plaintiff appealed the Superintendent's decision to the Central Office Review Committee on February 26, 2012. After this appeal was denied,

---

[5] The Court takes judicial notice that PIMS, which stands for Progressive Inmate Movement System, is a program employed at Southport by which Special Housing Unit ("SHU") inmates may achieve designated privileges based on improvements in and maintenance of acceptable behavior. *See, e.g., Callender v. State of New York*, UID No., 2012-049-108 (N.Y. Ct. Cl., Weinstein, D., Aug. 3, 2012) (describing system employed at Southport and identifying Level III as providing the greatest range of privileges, including broader rights to clothing and property).

Plaintiff commenced an Article 78 proceeding in state court, on June 1, 2004, seeking delivery of his shorts.

Plaintiff alleges that, two days after filing his Article 78 petition, on June 3, 2004, he was "suddenly discriminatively [sic] targeted for retaliatory harassment" and issued a false misbehavior report for which Defendant McGinnis designated a biased hearing officer, Defendant Donahoe. Compl. ¶ 51. When Plaintiff appealed Donahoe's determination of guilt, the disposition was affirmed by another McGinnis designee, Defendant Daniel Sullivan. On June 9, 2004, Plaintiff was targeted for further retaliation and issued another false misbehavior report, on which he was again found guilty by Donahoe, and the determination later affirmed by Daniel Sullivan. Plaintiff was demoted to a PIMS Level I classification.

On November 30, 2004, Plaintiff received a favorable decision in his Article 78 proceeding, with the state court concluding that Directive 4911 did not prohibit the possession of multi-colored shorts. When Plaintiff sought to obtain his shorts, however, he was told he was not then eligible to receive them because he was not at a PIMS Level III.

Plaintiff was promoted from PIMS Level I to Level II on December 14, 2004. Though he had not been returned to Level III, he renewed his efforts to obtain the shorts. According to Plaintiff, Defendants McGinnis and Sheahan refused his requests, improperly ignoring the court order. When he prepared a further grievance, it is alleged that McGinnis and Sheahan conspired with Defendant Cieslak to obstruct the grievance process, Sheahan attempted to coerce Plaintiff into voluntarily giving up the shorts, Sheahan and Defendant Chappius improperly removed the shorts from the package room, Sheahan refused to let Plaintiff examine the shorts, and Sheahan gave Plaintiff a deadline—January 28, 2005—by

6

which to submit a "#2068 Authorization for disposal of personal property form" to avoid destruction of the shorts.

Plaintiff alleges that he filled out the form on January 27, requesting that the shorts be mailed to his home, and that the request was received in the package room on January 28. However, Defendant Chappius also filled out a form on January 27, directing that the shorts be destroyed, and that is what occurred. Plaintiff grieved the destruction of his shorts. It is alleged that Cieslak again obstructed the grievance process, McGinnis denied the grievance, Defendant Kennedy denied his further claim to be reimbursed the value of the shorts, and McGinnis denied the appeal of that determination.

Plaintiff's second claim is against Defendants Alves, Irizarry, Selsky, and Williams. It involves conduct that relates to a disturbance on Plaintiff's gallery on January 24, 2005, for which Plaintiff received a misbehavior report and was placed on cell shield and deprivation orders. He alleges that Defendant Alves did not act on his request to be taken off a restricted diet; Defendant Williams, who was to act as Plaintiff's hearing assistance officer, displayed a conflict of interest and conspired to frustrate and undermine Plaintiff's defense; Defendant Irizarry, the assigned hearing officer, had no authority to conduct the hearing, was biased, violated Plaintiff's due process rights, ejected him from the hearing, denied him discovery, declined to call all his witnesses, made a determination of guilt without sufficient evidence, and improperly imposed six months' SHU confinement; and Defendant Selsky, who rendered a decision on Plaintiff's appeal, merely reduced SHU confinement to three months, instead of reversing and expunging the disciplinary determination.

The third claim, against Defendants Annucci, Donahue, Furman, Hillard, and Waters, relates to the alleged wrongful confiscation of Plaintiff's legal books by Waters, an action that Annucci was informed of, but failed to remedy. Plaintiff further alleges that Waters filed a false misbehavior report against Plaintiff regarding the legal books taken from his cell, and that Furman, Hillard, and Donahue denied him due process when they prevented Plaintiff from attending the subsequent hearing on the matter.

## STANDARDS OF LAW

### *Standard under Federal Rule of Civil Procedure 12(b)(6) to Dismiss*

When considering a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all factual allegations in the complaint as true and make all reasonable inferences in a plaintiff's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). In order to survive such a motion, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *ATSI Commc'ns, Inc.*, 493 F.3d at 98. This assumption of truth applies only to factual allegations and is inapplicable to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Inasmuch as Plaintiff is proceeding *pro se*, this Court must, of course, follow the directive of the Second Circuit, that:

> When considering motions to dismiss a *pro se* complaint such as this, "courts must construe [the complaint] broadly, and interpret [it] to raise the

8

> strongest arguments that [it] suggests." *Cruz v. Gomez*, 202 F.3d 593, 597
> (2d Cir. 2000) (internal quotation marks omitted). This is especially true when
> dealing with *pro se* complaints alleging civil rights violations. *See Weinstein
> v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001). Accordingly, the plaintiff's
> allegations in this case must be read so as to "raise the strongest arguments
> that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)
> (internal quotation marks omitted).

*Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138, 145–46 (2d Cir. 2002).

### Standard under Federal Rule of Civil Procedure 56(b) for Summary Judgment

As a general rule, summary judgment will not be granted before discovery. Summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact zexists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598 (1970). Additionally, "the movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.40(1)(a) ( Matthew Bender 3d ed.).

"In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548 (1986)), *cert. denied*, 517 U.S. 1190 (1996). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993 (1962). Summary judgment is appropriate only where, "after drawing all

reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the nonmoving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993).

### Standard Under 42 U.S.C. § 1983

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d. Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).

### ANALYSIS

### Defendant Sepiol's Alleged Failure to Respond

As noted above, Defendant Sepiol is dismissed from this action pursuant to the Court's Order dated March 10, 2009, ECF No. 7. However, because that Order did not specifically identify the dismissed defendants, the Clerk of Court subsequently entered a default as to Sepiol, at Plaintiff's request, ECF No. 19. This entry, while understandable, is obviously of no effect. Accordingly, Defendants' motion to set aside the Clerk's entry of default, ECF No. 26, is granted, and Plaintiff's motion for default judgment against Sepiol is denied.

### Plaintiff's Motion to Strike or Deny Defendants' Motion to Dismiss

Defendants have moved for full or partial dismissal of the claims made against several of them. In response, Plaintiff requests that the Court strike or deny Defendants'

motion because: (1) it was filed prior to discovery, ECF No. 42 at 1, and (2) the moving Defendants are in default, *id.* at 6-8. To the extent it is directed to Defendants' motion to dismiss, Plaintiff's motion to strike is denied.

Plaintiff first maintains that he is entitled to discovery before the Court rules on the motion to dismiss. The Federal Rules of Civil Procedure require that a motion to dismiss for "failure to state a claim upon which relief can be granted . . . *must be made before pleading* if a responsive pleading is allowed." FED. R. CIV. P. 12(b) (emphasis added). The Rules expressly provide that such motions be made before answer and discovery because the motion is directed solely at the sufficiency of the complaint; matters outside the pleading are not considered. In short, Plaintiff's contention that a pre-discovery ruling on a Rule 12(b)(6) motion violates due process is without merit.

Plaintiff next contends that Defendants' motion was filed more than 20 days after certain of Defendants were served, and that the Clerk of Court improperly declined to enter defaults on the basis of the late filing. Even assuming some or all Defendants were at one time in default, the default was cured once he or she appeared and responded to the complaint. Therefore, the Clerk of Court did not err in declining Plaintiff's request for entry of default after Defendants had filed their motion to dismiss, nor will the Court strike the motion to dismiss on that basis.[6]

---

[6] Defendants are cautioned not to read this as a license to withhold proof of service or to file untimely documents without first obtaining an extension of time. This ruling is directed solely to Plaintiff's contention that it was error to deny an entry of default after defendants had responded.

***Defendants' Motion to Dismiss***

<u>*Claims against Defendants in their Official Capacity*</u>

Plaintiff has sued five Defendants—McGinnis, Sheahan, Chappius, Cieslak, and Kennedy—in their individual and official capacities. These Defendants first move to dismiss all official capacity claims against them on Eleventh Amendment grounds. Suits against government officials in their official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690 n.55, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). "[T]he Eleventh Amendment bars a damages action against a State in federal court [and] [t]his bar remains in effect when State officials are sued for damages in their official capacity." *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) (internal citations omitted).

Injunctive relief is another matter. In *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), the Supreme Court held that a state official acting in his or her official capacity may be sued for prospective injunctive relief from ongoing violations of federal law. *McKeown v. N.Y. State Comm'n on Judicial Conduct*, No. 08-4586-cv, 377 Fed. Appx. 121, 2010 U.S. App. LEXIS 10056 (2d Cir. May 18, 2010). Though Defendants do not address this issue, the Court notes that the last alleged acts by these five Defendants relate to the disposition of Plaintiff's grievance, in early 2005, over the destruction of his Bermuda shorts. As there are no allegations of any ongoing violation for which Plaintiff

could obtain prospective injunctive relief,[7] the official capacity claims are dismissed in their entirety.

### *The First Claim for Relief*

Construing the Complaint broadly, Plaintiff alleges that Defendants McGinnis, Sheahan, Chappius, Cieslak, and Kennedy retaliated against him for filing an Article 78 proceeding by denying him his Bermuda shorts, denying him reimbursement, and interfering with the prison disciplinary and grievance processes. Compl. ¶ 99. Only Sheahan and Chappius have moved to dismiss the retaliation claim. All, except McGinnis, have moved to dismiss Plaintiff's claims that the alleged conduct, in and of itself, gives rise to a constitutional violation. This latter aspect of Defendants' motion is considered first.

### *Alleged Constitutional Violations*

As already noted in detail above, Defendant Sheahan is alleged to have denied Plaintiff's requests to examine and possess a pair of Bermuda shorts. When Plaintiff attempted to file a grievance regarding his requests, Defendant Cieslak returned the grievance to him due to its length—12 pages—thereby delaying processing of Plaintiff's complaint. Thereafter, Defendants Sheahan and Chappius destroyed the shorts, and Defendant Kennedy denied Plaintiff's request for compensation. Sheahan, Chappius, and Kennedy are alleged to have deprived Plaintiff of his property without due process, Compl. ¶ 99, and Cieslak to have "unlawfully" obstructed the grievance process and "deprive[d] Plaintiff of his rights," (*id*. ¶ 75).

---

[7] The Court further notes that Plaintiff is no longer in DOCCS' custody, thus any request for prospective injunctive relief is now moot.

Setting aside, for a moment, Plaintiff's claim that such conduct was retaliatory, the conduct, in and of itself, does not constitute a violation of constitutional rights. "Inmates do not have a constitutional right to have grievances processed or to ensure that grievances are processed properly." *Conseillant v. Lafontant*, 2009 U.S. Dist. LEXIS 61795, at *6 (N.D.N.Y. July 20, 2009) (citation omitted); *see also Torres v. Mazzuca*, 246 F. Supp.2d 334, 342 (S.D.N.Y. 2003) (prison grievance procedures do not confer any constitutionally protected right on an inmate). Thus, Plaintiff's allegation that Cieslak delayed or obstructed the grievance process fails to state a constitutional claim.

As for the alleged deprivation of property without due process, New York State provides an adequate post-deprivation remedy in the Court of Claims. *Reynolds v. Barrett*, 741 F. Supp. 2d 416, 443 (W.D.N.Y. 2010) (citing *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001)). Therefore, Plaintiff does not state a due process claim under § 1983 against Sheahan, Chappius, and Kennedy.

### *Retaliation*

Claims of retaliation find their roots in the First Amendment. *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004). Central to such claims is the important principle that in a prison setting, corrections officials may not take actions that would have a chilling effect upon an inmate's exercise of First Amendment rights. *See id.* at 381-383. Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care. See *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). As the Second Circuit has noted:

> [t]his is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are

14

Case 6:08-cv-06045-CJS-MWP   Document 64   Filed 01/11/13   Page 15 of 23

therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002).

To state a retaliation claim under 42 U.S.C. § 1983, a plaintiff must allege facts plausibly suggesting that: (1) the speech or conduct at issue was "protected"; (2) the defendants took "adverse action" against the plaintiff—namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action—that is, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977); Gill, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d at 492).

Captain Sheahan and Deputy Superintendent of Security Chappius, the only Defendants to move on the retaliation claim, contend that Plaintiff does not allege a causal connection between his Article 78 proceeding and their allegedly retaliatory conduct.[8] The Court disagrees. It may be that Plaintiff ultimately will be unable to show a causal connection, but for purposes of the instant motion, he has set forth sufficient facts to render

---

[8] They raise no arguments as to the first two elements, and apparently concede that they are sufficiently pled.

such a connection at least plausible. Plaintiff alleges that, after receiving a favorable state court decision, Sheahan repeatedly refused his requests for compliance with the court order, Sheahan and Cieslak delayed the processing of his further grievance seeking compliance, and after Plaintiff ultimately ceded to the directives issued by Sheahan, Sheahan and Chappius destroyed the property that was the subject of the court order. Plaintiff's fact allegations as to the nature of Defendants' conduct and its temporal proximity to his success in litigation, are sufficient to allege a causal connection. Temporal proximity between protected activity and the alleged discriminatory conduct may serve as circumstantial evidence of retaliation. *Jackson v. Goord*, No. 06-CV-6172CJS, 2011 U.S. Dist. LEXIS 117539, at *55 (W.D.N.Y. Oct. 12, 2011) (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

### *The Second Claim for Relief*

Plaintiff's second claim is against Defendants Alves, Irizarry, Selsky, and Williams. Only Alves has moved to dismiss for failure to state a claim.

After being charged with misbehavior on January 24, 2005, Plaintiff was placed on a restricted diet. According to Plaintiff, he wrote a letter to Alves the next day, advising that he "could not eat the loaf diet" and had not been seen by a nurse prior to placement on the diet. He also reminded Alves that he had high blood pressure, high cholesterol, and had lost 20 pounds in a two-week period in 2001 or 2002 while on the loaf diet. Compl. ¶ 122. Alves responded two days later, on January 28, 2005, and directed Plaintiff to address his problems through the established sick call procedures. *Id*. ¶ 123. Plaintiff claims that Alves's failure to immediately recommend that he be removed from a restricted diet

constitutes deliberate indifference.

The legal standard applicable to Eighth Amendment medical claims is well settled in this Circuit:

> To substantiate an Eighth Amendment claim for medical indifference, a plaintiff must prove that the defendant was deliberately indifferent to a serious medical need. *See Farmer v. Brennan*, 511 U.S. 825, 834-35, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994). A deliberate indifference claim requires a showing of both objective and subjective elements. *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003). "Objectively, the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir.1996) (citation and internal quotation marks omitted). Where the allegation is that the defendant failed to provide any treatment for the medical condition, "courts examine whether the inmate's medical condition is sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir.2006). Where the challenge is to the adequacy of the treatment provided, such as in cases where treatment is alleged to have been delayed or interrupted, the seriousness inquiry focuses on "the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract." *Smith*, 316 F.3d at 186. Moreover, "a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment." *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir.2011); *see also Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir.1998).
>
> "Subjectively, the official charged . . . must act with a sufficiently culpable state of mind." *Curcione*, 657 F.3d at 122 (citation and internal quotation marks omitted); *see also Chance*, 143 F.3d at 703. A person acts with deliberate indifference to an inmate's health or safety only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. 1970.

*Hanrahan v. Mennon*, 470 Fed. App'x 32, 33, 2012 WL 1764196 at *1 (2d Cir. 2012). In the instant case, Plaintiff's challenge is to the "adequacy of the treatment provided," since he alleges that Alves did not act promptly and did not himself make the recommendation requested.

Defendants contend that Plaintiff fails to state a claim because, accepting the Complaint as true, Alves did promptly and appropriately respond to Plaintiff. The Court agrees that, even upon the most liberal construction of the complaint, Plaintiff does not state a deliberate indifference claim. The complaint does not identify a particular risk of harm or any actual harm. Moreover, Plaintiff does not allege that he attempted to follow Alves's recommendation without success. He states only that Alves responded to him within two days, and he "starved for an entire week" because Alves did not immediately grant his request in the manner he preferred. Compl. ¶ 123. These allegations are not sufficient to state a claim for relief, and Defendant Alves is entitled to dismissal of the claim against him.

### The Third Claim for Relief

Each Defendant named in the third claim, involving the alleged confiscation of Plaintiff's legal books, and a disciplinary hearing on charges lodged against Plaintiff in connection with the legal books, has moved to dismiss.

#### The Confiscation of Legal Books

The complaint alleges that, on January 24, 2005, Defendant Waters removed law books belonging to Plaintiff from his cell. It already has been determined that any claim based on this alleged confiscation is untimely. However, Plaintiff goes on to allege that, when he later complained about the confiscation of his property, DOCCS Deputy Commissioner Annucci failed to "resolve the constitutional transgression" by either returning the books or compensating Plaintiff for them. Compl. ¶ 176.

As noted in connection with Plaintiff's first claim, New York State provides an adequate post-deprivation remedy in the Court of Claims. *Reynolds v. Barrett*, 741 F. Supp. 2d at 443. As such, Plaintiff does not state a constitutional claim against Annucci.

### The Disciplinary Charges and Hearing

On January 28, 2008, Defendant Waters filed a misbehavior report against Plaintiff, in which he charged that Plaintiff falsely represented the legal books belonged to him and tampered with State property. According to Plaintiff, these charges were false, and were issued in an attempt to disguise the theft of his legal books. Although Defendant Waters has not moved to dismiss Plaintiff's allegations in this regard, it is well established that, even if they are true, the issuance of a false misbehavior report does not state a cognizable constitutional claim. "[A] prison inmate has no general right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F. 3d 857, 862 (2d Cir. 1997) (cited in *Bennett v. D.S.D. Habeck*, No. 11-CV-6585-CJS, 2012 U.S. Dist. LEXIS 115182, at *6 (W.D.N.Y. Aug. 15, 2012)). Accordingly, this allegation against Waters is dismissed, *sua sponte*, under 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim. As there are no further fact allegations against Waters, the complaint is dismissed in its entirety as against him.

The remaining allegations relate to the subsequent disciplinary hearing held on February 2, 2005, which Plaintiff alleges he was not permitted to attend. In the context of a prison disciplinary hearing, inmates possess due process rights under the Fourteenth Amendment, but "the full panoply of rights" due a defendant in a criminal proceeding does not apply. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *Zavaro v. Coughlin*, 970 F.2d

1148, 1152 (2d Cir. 1992). An inmate has the right to advance written notice at least twenty-four hours prior to a disciplinary hearing, he has a right to be advised of the facts relied upon by prison officials in bringing charges, he has the right to call witnesses and to present documentary evidence, *Wolff*, 418 U.S. at 563-66, and he has the right to an assistant to aid him in the preparation of his defense, *Eng v. Coughlin*, 858 F.2d 889, 898 (2d Cir. 1988).

Here, Plaintiff alleges that C.O. Hillard arrived at his cell to escort him to the hearing, but appeared hostile and aggressive. Compl. ¶ 162. According to Plaintiff, he had previously been assaulted by Hillard, was fearful of his demeanor, and asked Hillard to call a supervisor to oversee the escort. *Id*. ¶ 163. Hillard then left the gallery and returned minutes later with Furman, who asked Plaintiff what the problem was. *Id*. ¶ 165. Plaintiff explained his fear that Hillard would assault him if allowed to escort him unsupervised. *Id*. ¶166. Defendants Furman and Hillard left the gallery. *Id*. ¶168. Someone then advised the hearing officer, Defendant Donahue, that Plaintiff refused to attend the hearing, after which Donahue conducted the hearing without him. *Id*. ¶169. Plaintiff alleges Defendant Donahue should have come to his cell to assess whether Plaintiff had "knowingly and intelligently" refused to attend, particularly where he did not sign a refusal to attend hearing form. *Id*. ¶¶ 165, 170. Defendants, urge, without citation or explanation, that these facts do not state a constitutional claim.

In general, a prisoner who refuses to attend a disciplinary hearing forfeits the opportunity to challenge the underlying misbehavior report. *Murray v. Foster*, No. 08-CV-0872, 2010 U.S. Dist. LEXIS 66977, at 7-8 (N.D.N.Y. June 11, 2010). Here, however,

Plaintiff alleges he did not refuse, but was prevented from attending by Hillard and Furman. Under the lenient standards applicable at this stage in the proceedings, the allegation that Defendants kept Plaintiff from appearing at his disciplinary hearing is sufficient to state a plausible claim for relief. *Hiney v. Wilson*, 520 F.2d 589, 591 (2d Cir. 1975) (reversing dismissal of claim against corrections officers who allegedly prevented plaintiff from attending hearing).

As for Donahue, Plaintiff does not allege that he violated any of the due process rights recognized in *Wolff*, 418 U.S. at 563-66. Prisoners to not have a constitutional right to be personally interviewed by a hearing officer as to the validity of a purported waiver.[9] Accordingly, Plaintiff fails to state a claim for relief against Donahue. Because all allegations against Donahue are now dismissed, he is terminated from this action.

### Plaintiff's Motion to Strike or Deny Defendants' Summary Judgment Motion

Defendants Selsky, Williams, and Irizarry have moved for summary judgment as to all claims against them, which are brought in connection with another disciplinary hearing. In response, Plaintiff requests that the Court strike or deny the motion because: (1) there has not yet been discovery, (2) Defendants' answers were untimely and the Clerk of Court erroneously failed to enter default against them, and (3) the motion itself is untimely. ECF No. 42 at 1-6.

The Court declines to deny or strike Defendants' motion on the ground that their answers were untimely for the same reasons discussed in connection with the motion to dismiss. And because no deadline was ever set for filing summary judgment motions, the

---

[9] Nor does such a right exist under state law. *See Pauljajoute v. Goord*, 306 A.D.2d 576, 577 (3d Dep't 2003).

motion itself is not untimely. That leaves the issue of discovery.[10]

Defendants did not oppose Plaintiff's motion to strike, but they do assert, in support of their own motion, that because Plaintiff's claims are based on what occurred at a disciplinary hearing, all "relevant facts should be contained in the transcript and submitted documents" provided with their motion. ECF No. 23 ¶ 6.

As noted above, the general rule is that summary judgment will not be granted prior to discovery. Even assuming the accuracy of Defendants' assertion, there are two compelling reasons to follow that general rule here. First is Plaintiff's *pro se* status. Second, this case will proceed to discovery with respect to seven other Defendants, whose motion to dismiss is now denied. In light of the posture of this case, Defendants' motion for summary judgment will be dismissed without prejudice and may be renewed upon the completion of discovery.

## CONCLUSION

For the reasons stated, Plaintiff's motion for default judgment against Defendant Sepiol, ECF No. 39 is denied, and Defendants' motion to vacate the Clerk's entry of default as to Sepiol, ECF No. 26, is granted. Plaintiff's motion to deny or strike Defendants' motions, ECF No. 42, is granted in part, and denied in part. Defendants' motion to dismiss, ECF No. 12, is granted in part, and denied in part, consistent with the foregoing discussion. Specifically, the motion is denied with respect to: (1) all claims against McGinnis, acting in

---

[10] Plaintiff is advised that, under Rule 56 of the Federal Rules of Civil Procedure, it is not enough to simply protest that there has been no discovery. The nonmovant must show "by affidavit or declaration that, for specified reasons, [he] cannot present" essential facts. Fed. R. Civ. P. 56(d). In other words, the nonmovant must identify the essential facts he expects to obtain through discovery that will justify his opposition to the motion. Plaintiff has not done so here.

his individual capacity, (2) the retaliation claim against Sheahan, Chappius, Cieslak, and Kennedy, acting in their individual capacities, and (3) the due process claim against Furman and Hillard. Defendants motion for summary judgment, ECF No. 20, is denied without prejudice so as to allow for the conduct of discovery.

The Complaint is dismissed in its entirety, with prejudice, as to Defendants Alves, Annucci, Cassler, Donahue, Gleason, Sepiol, C.O. Sullivan, Captain Sullivan, and Waters. The Clerk is directed to enter judgment for these defendants.

IT IS SO ORDERED.

Dated:   January 10, 2013
         Rochester, New York

/s/ Charles J. Siragusa_____
CHARLES J. SIRAGUSA
United States District Judge